# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-20750-CR-LENARD/GOODMAN

**UNITED STATES OF AMERICA**

**v.**

**ALEJANDRO AMOR.**

_____/

## ORDER DENYING IN PART AND RESERVING ON IN PART DEFENDANT ALEJANDRO AMOR'S MOTION IN LIMINE TO PRECLUDE EVIDENCE AND ARGUMENT OF DEFENDANT'S WEALTH (D.E. 294)

**THIS CAUSE** is before the Court on Defendant Alejandro Amor's Motion in Limine to Preclude Evidence and Argument of Defendant's Wealth, ("Motion," D.E. 294), filed on October 12, 2015.  The Government filed a Response on October 16, 2015, ("Response," D.E. 323), to which Defendant filed a Reply on October 17, 2015, ("Reply," D.E. 333).  Upon review of the Motion, Response, Reply, and the record, the Court finds as follows.

## I. Background

Defendant is charged by Second Superseding Indictment with conspiracy to steal government money, namely federal Pell Grants and Direct Loans, in violation of 18 U.S.C. § 371, and twelve substantive counts of theft of government money, in violation of 18 U.S.C. § 641.  (See D.E. 252.)  The Second Superseding Indictment alleges that Defendant was the President and Chief Operating Officer of FastTrain College, a proprietary college with seven campuses that awarded career diplomas and industry certifications in medical assisting, medical coding, and computer technology, among

others.  (Id. ¶¶ 1-2, 8.)  It is alleged that Defendant and other FastTrain employees fraudulently obtained federal funds by (1) recruiting ineligible students (e.g., those without a high school diploma, GED, or recognized equivalent), (2) coaching the ineligible students to lie on their Free Applications for Federal Student Aid ("FAFSAs") by stating that they did have a high school diploma, and (3) collecting federal student aid funds on behalf of these ineligible students.  (See id. at 5-16.)

## II.    Legal Standard

A  motion  in  limine  presents  a  trial  court  with  pretrial  issues  regarding admissibility of evidence that a party is likely to present at trial.  See Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd., No. 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013).  "The real purpose of a motion in limine is to give the trial judge  notice  of  the  movant's  position  so  as  to  avoid  the  introduction  of  damaging evidence, which may irretrievably affect the fairness of the trial."  Id.

Generally, "[m]otions in limine are disfavored."  Id.  "In fairness to the parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds."  United States v. Gonzalez, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010).  Accordingly, if evidence is not clearly inadmissible, "evidentiary  rulings  should  be  deferred  until  trial  so  that  questions  of  foundation, relevancy,  and  potential  prejudice  may  be  resolved  in  proper  context."  Id. (internal citation and quotation marks omitted).  Even when a trial court does rule in limine, its ruling "remains subject to reconsideration by the court throughout the trial"

and the parties may renew their objections as appropriate.  Stewart v. Hooters of Am., Inc., No. 8:04–cv–40–T–17–MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007).

## III.    Discussion

Defendant moves under Federal Rule of Evidence 403 for an order broadly precluding the Government from introducing the following categories of what Defendant characterizes as "wealth evidence"[1]: (1) information as to his lifestyle; (2) information as to his financial state; (3) financial transactions after or before the period of the alleged fraud; or (4) any category of expenses during the alleged period without introducing all documentary evidence associated with the expense.  (Mot. at 1-2.)  However, he only directs the Court to one particular summary exhibit that the Government plans to introduce at trial.  ("Summary Exhibit," D.E. 294-1.)  The Summary Exhibit includes the following:

1. A flow chart of funds distributed by the United States Department of Education ("DOE") to the Federal Funds Accounts of Fast Train's individual campuses between January 1, 2008 and June 30, 2012, (D.E. 294-1 at 4);

2. A line graph tracking the amount of federal student aid distributed to FastTrain from 2008 to 2012, (id. at 5);

3. A flow chart of funds transferred from DOE to FastTrain Federal Funds Accounts and then to FastTrain Operating Accounts, (id. at 6);

---

[1]     It does not appear that the Eleventh Circuit has formally defined "wealth evidence," other than to note generally that "evidence of wealth or extravagant spending may be admissible when relevant to issues in the case and where other evidence supports a finding of guilt." United States v. Bradley, 644 F.3d 1213, 1271 (11th Cir. 2011) (citing United States v. White, 589 F.2d 1283, 1286 n.7 (5th Cir. 1979)).

4.  A flow chart showing Defendant's use of funds from FastTrain Operating Accounts for, inter alia, personal assets such as an airplane, waterfront home, and yacht, with photographs of each item (id. at 7);

5.  A table of what appears to be amounts per annum that Defendant charged to FastTrain's American Express account for his yacht, travel, restaurant, airplane, and other miscellaneous expenses from 2008 to 2012, (id. at 8);

6.  A flow chart showing the amount of DOE funds that were paid to FastTrain employees Juan Arreola, Luis Arroyo, Jose W. Gonzalez, and Juan Peña, (id. at 9);

7.  A flow chart showing the amount of FastTrain Operating Account funds used to make mortgage payments on FastTrain property, (id. at 10); and

8.  A flow chart showing money derived from the sale of FastTrain assets that were allegedly used to pay off the mortgage on Defendant's home, (id. at 11).

Defendant argues that "[t]he exhibit has no evidentiary value and includes pictures whose sole purpose is to inflame the jury [sic] sensibility." (Mot. at 2.)

A district court has "broad discretion to admit the Government's 'wealth evidence' so long as it aided in proving or disproving a fact in issue." United States v. Bradley, 644 F.3d 1213, 1272 (11th Cir. 2011). (citing United States v. Terzado-Madruga, 897 F.2d 1099, 1117 (11th Cir. 1990)). "Conversely, the court's discretion to exclude evidence under Rule 403 is limited. Evidence may be excluded only when 'its probative value is substantially outweighed by the danger of unfair prejudice.'" Terzado-Madruga, 897 F.2d at 1117 (quoting Fed. R. Evid. 403)). However, "Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude

concededly probative evidence." United States v. Finestone, 816 F.2d 583, 585 (11th Cir. 1987). That said, "[u]se of a defendant's wealth to appeal to class bias can be 'highly improper' and can deprive that defendant of a fair trial." Bradley, 644 F.3d at 1271 (quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239 (1940)); see also United States v. Hope, 608 F. App'x 831, 838 (11th Cir. 2015); United States v. Jackson-Randolph, 282 F.3d 369, 376 (6th Cir. 2002). Because "it is often difficult to determine whether wealth evidence is 'intended to appeal to class bias or to establish a fact in issue[,]'" Hope, 608 F. App'x at 838 (quoting Bradley, 644 F.3d at 1271), "a court's determination of whether wealth evidence is relevant under Rule 401 . . . and whether the evidence's probative value is substantially outweighed by its unfair prejudice under Rule 403 . . . must turn on the specific facts of the case[,]" id. (citing Jackson-Randolph, 282 F.3d at 378).

With respect to Defendant's broad request for an order precluding the Government from introducing: (1) information as to his lifestyle; (2) information as to his financial state; (3) financial transactions after or before the period of the alleged fraud; or (4) any category of expenses during the alleged period without introducing all documentary evidence associated with the expense, (Mot. at 1-2), the Court finds that evidence of these types may be admissible to establish motive. See Hope, 608 F. App'x at 839; Bradley, 644 F.3d at 1271-72. It also may be admissible to explain the context and set-up of the crime. See Hope, 608 F. App'x at 839. Because this evidence is not "clearly inadmissible on all potential grounds," Gonzalez, 718 F. Supp. 2d at 1345, Defendant's motion is denied.

5

With respect to the particular Summary Exhibit, the Court finds as follows:

1. The flow chart of funds distributed by DOE to the Federal Funds Accounts of FastTrain's individual campuses between January 1, 2008 and June 30, 2012, (D.E. 294-1 at 4), does not constitute wealth evidence. It makes no mention of Defendant, his assets, his lifestyle, or his spending habits. It merely traces the federal funds that the Government distributed to FastTrain. The Court finds that this evidence is necessary to complete the story of the crime and is inextricably intertwined with evidence regarding the offenses. See United States v. Ramsdale, 61 F.3d 825, 829 (11th Cir. 1995).

2. The line graph tracking the amount of federal student aid distributed to FastTrain from 2008 to 2012, (D.E. 294-1 at 5), does not constitute wealth evidence. It makes no mention of Defendant, his assets, his lifestyle, or his spending habits. It merely traces the amount of federal funds the Government distributed to FastTrain between 2008 to 2012 in line graph format. The Court finds that this evidence is necessary to complete the story of the crime and is inextricably intertwined with evidence regarding the offenses. See Ramsdale, 61 F.3d at 829.

3. The flow chart of funds transferred from DOE to FastTrain Federal Funds Accounts and then to FastTrain Operating Accounts, (D.E. 294-1 at 6), does not constitute wealth evidence. It makes no mention of Defendant, his assets, his lifestyle, or his spending habits. It merely shows the amount of federal student aid funds that was distributed to FastTrain and ultimately transferred into FastTrain's Operating Accounts. The Court finds that this evidence is necessary to complete

the story of the crime and is inextricably intertwined with evidence regarding the offenses. See Ramsdale, 61 F.3d at 829 (11th Cir. 1995).

4. The Court will assume without deciding that the flow chart showing Defendant's use of FastTrain Operating Account funds for, inter alia, personal assets such as an airplane, waterfront home, and yacht, (D.E. 294-1 at 7), constitutes wealth evidence.[2]  However, the Court finds that this evidence is necessary to complete the story of the crime and is inextricably intertwined with evidence regarding the offenses. See Ramsdale, 61 F.3d at 829 (11th Cir. 1995).  It is also highly relevant to Defendant's motive for committing the crime of stealing government money— i.e., to fund his lifestyle and pay for luxury expenses.  See Hope, 608 F. App'x at 839; Bradley, 644 F.3d at 1271-72.  For this reason, the Court further finds that the probative value of the photographs of Defendant's airplane, home, and yacht is not substantially outweighed by the risk of undue prejudice.  See United States v. De Parias, 805 F.2d 1447, 1453-54 (11th Cir. 1986) (holding that the probative value of photographs of "badly decomposed corpse" of a murder victim was not substantially outweighed by unfair prejudice), overruled on other grounds by United States v. Kaplan, 171 F.3d 1351, 1356-57 (11th Cir. 1999).

5. The Court will assume without deciding that the table of what appears to be amounts per annum that Defendant charged to FastTrain's American Express account for his yacht, travel, restaurant, airplane, and other miscellaneous

---

[2]    See supra Note 1.

expenses from 2008 to 2012, (D.E. 294-1 at 8), constitutes wealth evidence.[3] However, the Court finds that this evidence may be necessary to complete the story of the crime and may be inextricably intertwined with evidence regarding the offenses.  See Ramsdale, 61 F.3d at 829 (11th Cir. 1995).  It may also be highly relevant to Defendant's motive for committing the crime of stealing government money—i.e., to fund his lifestyle and pay for luxury expenses.  See Hope, 608 F. App'x at 839; Bradley, 644 F.3d at 1271-72.  For this reason, the Court finds that the probative value of evidence regarding expenditures for Defendant's airplane, home, and yacht is not substantially outweighed by the risk of undue prejudice. However, the Court reserves ruling on whether this exhibit will ultimately be admissible, subject to predicate evidence which establishes its relevancy and probative value.

6.  The flow chart showing the amount of DOE funds that were paid to FastTrain employees Juan Arreola, Luis Arroyo, Jose W. Gonzalez, and Juan Peña, (D.E. 294-1 at 9), does not constitute wealth evidence.  It makes no mention of Defendant, his assets, his lifestyle, or his spending habits.  It merely shows payments made from FastTrain operating accounts to Arreola, Arroyo, Gonzalez, and Peña.

7.  The flow chart showing the amount of FastTrain Operating Account funds used to make mortgage payments on properties where FastTrain was located, (id. at 10), does not constitute wealth evidence.  It makes no mention of Defendant, his assets,

---

[3]       See supra Note 1.

8

his lifestyle, or his spending habits.  However, the Court reserves ruling on whether this exhibit will ultimately be admissible, subject to predicate evidence which establishes its relevancy and probative value.

8. The Court will assume without deciding that the flow chart showing money derived from the sale of FastTrain assets that was allegedly used to pay off the mortgage on Defendant's "waterfront home," (id. at 11), constitutes wealth evidence.[4]  However, the Court finds that this evidence may be necessary to complete the story of the crime and may be inextricably intertwined with evidence regarding the offenses.  See Ramsdale, 61 F.3d at 829 (11th Cir. 1995).  That is, Defendant used federal student aid funds to make mortgage payments on FastTrain properties which were later sold, the proceeds of which were used to satisfy the lien on Defendant's personal residence.  The Court further finds that the evidence's probative value is not substantially outweighed by its potential for unfair prejudice.  However, because neither the Motion nor the Government's Response details the particulars of the ownership and the purchase agreement, as well as the fact that the property sales and lien satisfaction took place four and seven months after the dates of the indictment, the Court reserves ruling on whether this exhibit will ultimately be admissible, subject to predicate evidence which establishes its relevancy and probative value.

---

[4]      See supra Note 1.

**IV.     Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Alejandro Amor's Motion in Limine to Preclude Evidence and Argument of Defendant's Wealth (D.E. 294), filed October 12, 2015, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 23rd day of October, 2015.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**